William R. Richardson (009278)
**RICHARDSON & RICHARDSON, P.C.**

1745 South Alma School Road
Corporate Center • Suite 100
Mesa, Arizona 85210-3010

Tel.    (480) 464-0600
Fax.    (480) 464-0602
Email.   wrichlaw@aol.com
Attorneys for Debtor

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| **P&P LAND HOLDINGS, LLC,** | 2:15-bk-06406-GBN |
| Debtor. | **COMBINED[1] DISCLOSURE STATEMENT AND PLAN OF REORGANIZATION OF P&P LAND HOLDINGS, LLC DATED May 22, 2015** |

## DISCLOSURE STATEMENT

## DISCLAIMER

The Court's approval of this Disclosure Statement only constitutes the Court's determination that this document contains "adequate information" under the terms of 11 U.S.C. §1125. Approval of this Disclosure Statement does not constitute an endorsement of the Plan on the part of the Court nor does it constitute a certification or imprimatur in any

---

[1]      The Debtor requests leave to submit its plan and disclosure statement as a combined document as is allowed under new 11 U.S.C. §1125(f) and Bankruptcy Rule 3017.1. Although the Debtor is not technically a "small business debtor" as defined under 11 U.S.C. §101(51D), the same reasons for allowing such a procedure in small business cases exists here. The dispute here has been with the major secured creditor, Compass Bank, which dispute has been resolved. Moreover, the disclosure statement includes the actual plan. The Debtor therefore submits that this Court may grant the relief requested herein under 11 U.S.C. §105 as being "appropriate to carry out the provisions of [the Bankruptcy Code]," and is "appropriate to ensure that the case is handled expeditiously and economically."

1  way of (1) the likelihood of success of any plan proposed or (2) of the accuracy of any

2  information provided in the Disclosure Statement. The Court has not performed any

3  independent analysis or investigation of the contents of the Plan or Disclosure Statement

4  and thus does not warrant the accuracy of either.  Care should be taken by anyone

5  considering the contents of the accompanying Plan or this Disclosure Statement to

6  independently analyze the contentions and information asserted in the Plan and Disclosure

7  Statement.

8  P&P Land Holdings, LLC (the "Debtor" or "P&P"), the Debtor in the above-

9  captioned proceeding, hereby submits the following Disclosure Statement to its creditors.

10  **A.   <u>General Information</u>**

11  P&P Land Holdings, LLC, the Debtor in the above-captioned Chapter 11 case,

12  submits this disclosure statement to its creditors and other parties in interest pursuant to

13  Section 1125 of the Bankruptcy Code in connection with its Plan of reorganization dated

14  May 22, 2015 (the "Plan").  The Plan is included here below and is incorporated herein by

15  reference.

16  Each creditor or party-in-interest should carefully review the Plan and Disclosure

17  Statement in its entirety to determine the full and precise content of any specific term or

18  provision.  The contents of this Disclosure Statement should not be construed as legal,

19  business or tax advice.  Each creditor should consult his or her own attorney, investment

20  advisor, business advisor and tax advisor concerning the legal, business, tax and related

21  aspects and ramifications of the Plan.  The information contained herein has not been

22  subject to an audit by a certified public accountant and, for the foregoing reason, Debtor is

23  unable to warrant or represent that the information contained herein is without any

24  inaccuracy. The information and representations contained in this Disclosure Statement and

25  Plan have been prepared from information provided by the Debtor. Accordingly, counsel

26  for the Debtor specifically disavows any responsibility for any inaccuracies contained

27  herein.  Neither the attorney for the Debtor nor the Debtor performed any independent

28  analysis or investigation of such information and thus do not warrant its accuracy.

B.  **Approval of Disclosure Statement and Voting.**

Typically, disclosure statements are distributed to assist creditors and interest holders in making an informed decision in accepting or rejecting a plan of reorganization. Pursuant to 11 U.S.C. § 1126(f), a class of claims not impaired under a plan of reorganization is conclusively presumed to have accepted the plan and solicitation of acceptance with respect to such class is not required. The holders of impaired claims are entitled to vote in their respective classes.

This disclosure statement is designed and intended to supply the holders of impaired claims or interest against the Debtor with "adequate information" from which they may make an informed judgment as to whether to vote for or against the plan. This disclosure statement cannot be used for soliciting votes until, after notice and hearing, the Court determines that the disclosure statement contains "adequate information" within the meaning of 11 U.S.C. § 1125.

Once the Court determines that the disclosure statement contains adequate information, the Court will enter an "Order Approving the Disclosure Statement and Setting Confirmation Hearing and Deadline for Voting on Plan." Pursuant to this order, each creditor holding an allowed claim in an impaired class will receive a ballot for purposes of voting on the Plan as set forth in the disclosure statement. Each creditor holding an impaired claim, after considering the Plan and disclosure statement may complete the ballot and return it to the following address:

Richardson & Richardson, P.C.
1745 S. Alma School Road
Suite 100
Mesa, AZ 85210-3010

C.  **Representations Concerning the Plan.**

No representation concerning the Debtor is authorized other than those set forth in this disclosure statement. Any representation made to secure your acceptance other than those contained in this disclosure statement should not be relied upon by you in arriving at your decision, and such additional representations and inducements should be reported

1   to Counsel for the Debtor who shall deliver such information to the Court and/or the United

2   States Trustee to take such actions as may be deemed appropriate.

3       **D.   <u>Definitions.</u>**

4           When used in this disclosure statement or Plan the following terms have the

5   following meanings.  To the extent that terms are not defined below, they shall have the

6   same meaning as in the Bankruptcy Code or Bankruptcy Rules.

7           When used in this Disclosure Statement or the Plan the following terms have

8   the following meanings.  To the extent that terms are not defined below, they shall have the

9   same meaning as set forth in the Bankruptcy Code or Bankruptcy Rules.

10          "Administrative Expense Claim" shall mean any claim entitled to priority in

11  payment under Section 503(b) of the Code and any and all fees due to the United States

12  Trustee.

13          "Allowed claim" or "allowed interest" means a claim against, or equity security

14  interest (or beneficial interest) in,  the Debtor to the extent that: (a) a proof of such claim

15  or interest was (i) timely filed; or (ii) deemed filed pursuant to § 1111(a) of the Code; and

16  (b)(i) which is not objected to, or (ii) which is allowed (and only to the extent allowed) by

17  a final order of the Bankruptcy Court.

18          "Bankruptcy Code" or "Code" means the Bankruptcy Code as set forth in Title

19  11 of the United States Code as amended.

20          "Bankruptcy Court" or "Court" means the United States Bankruptcy Court for

21  the District of Arizona.

22          "Bankruptcy Rules" means the rules of bankruptcy procedure as adopted by the

23  Supreme Court of the United States on April 25, 1983 and effective August 1, 1983, and

24  as subsequently amended.

25          "Claim" means a right to payment from the Debtors whether the amount is

26  fixed, contingent, unmatured, secured or unsecured.  Such terms shall include all other

27  rights to payment as encompassed in § 101(5) of the Bankruptcy Code.

28

"Class ___ creditor" means the holder of a claim in the designated class (i.e., class 1 creditor would mean the holder of a class 1 claim).

"Common Claims" means the unsecured claims (including claims that are deemed unsecured under 11 U.S.C. §506) that are held against both the Debtor and Prima Investments, Inc., a commonly owned sister company to the Debtor. These would include the secured claims of the Small Business Administration and BP / Tesoro (as identified hereinbelow).

"Common Creditor" means the holder of a Common Claim as defined above.

"Confirmation of the Plan" shall mean the entry of an order by the Bankruptcy Court confirming the Plan of Reorganization in accordance with § 1129 of the Bankruptcy Code.

"Consummation of the Plan" means the accomplishment of all things required or provided for under the terms of the Plan.

"Court" means the United States Bankruptcy Court for the District of Arizona.

"Creditors" means all persons having claims, causes of action, suits, demands, actions or judgments of any nature whatsoever, against the Debtor, whether liquidated, unliquidated, contingent or disputed arising at any time prior to the confirmation of the Plan, and includes all persons who claim a lien, encumbrance, security interest or the like against property of the Debtor.

"Debtor" means P&P Land Holdings, LLC, the petitioner in the above-captioned bankruptcy case.

"Disclosure Statement" means this Disclosure Statement filed in this case, approved by the Court, as being in conformity with §§ 1125 and 1145 of the Bankruptcy Code.

"Effective Date" means the latter of (1) the first business day following twenty days after entry of the order of the court confirming the Plan or (2) twenty days subsequent to the entry of a final order of a court of competent jurisdiction vacating or nullifying any order staying the efficacy of the order of confirmation, provided,

however, that in any event, all appeals shall have been resolved prior to there being any effective date.

"Final Order" means an order of the Court, the time for appeal from which has expired and from which no appeal was timely filed; or from which any appeal has been finally determined or dismissed, and the effectiveness of which has not been stayed.

"Insider" means those with a close connection to the Debtor as specifically defined in 11 U.S.C. §101(31) and includes, among others, " a relative of a general partner, director, officer, or person in control of the debtor."

"Insider Creditor" means any relative of the Debtor who has a claim against the Debtor or the Debtor's estate and includes any entity owned or controlled by such relative.

"Petition" means the original chapter 11 petition filed by the Debtor in this case.

"Plan" shall mean the Plan of reorganization included with this Disclosure Statement as it may be amended, modified, and/or supplemented pursuant to which the Debtor proposes payment to creditors and equity security holders.

"Plan Assets" are all assets of the bankruptcy estate in which equity in excess of any allowed exemption or secured claim is available for distribution to creditors.

"Plan Proponent" shall mean the Debtor whose name is identified in the foregoing caption.

"Plan Term" shall mean the earliest of either (1) the time period specified for paying the class of general unsecured creditors or (2) the date by which all allowed unsecured claims have received payments required by the Plan. Accordingly, if the Debtor is able to pay unsecured creditors the amounts required by the Plan more quickly through either accelerating payment, or borrowing amounts necessary to pay unsecured creditors under the Plan, the term of the Plan shall be deemed shortened to

the date on which the Debtor pays the amount due (or obtains satisfaction of) the last unsecured claim to receive payment under the Plan.  Long term Secured Creditors shall be paid according to the provisions of the Plan provided, however, the Plan term shall not be deemed extended beyond the date upon which unsecured creditors are paid.

"Related Debtor" shall mean Prima Investments, Inc., which is currently a debtors in possession in this jointly administered case.

"Secured Creditor" means creditors holding claims against the estate which are secured by a lien on property of the estate limited, however, by the operation of § 506(a) of the Bankruptcy Code.  Thus, if the amount of a creditor's allowed claim (plus the amount of all allowed senior secured claims) exceeds the value of the collateral, the creditor will be deemed to be an unsecured creditor to the extent of any insecurity, and a secured creditor to the extent of the value of the collateral.

"Unsecured Creditor" means all creditors of the estate with the exception of (1) priority or administrative creditors and (2) the allowed secured claims of Secured Creditors as defined herein.

**E.  <u>History of the Debtor</u>**

1.  Debtor is an Arizona limited liability company that was formed in 2009 by Sunil Patel with the expectation that its related entity, Prima Investments, Inc. ("Prima") would build and operate a service station and a related convenience store and car wash upon the Real Property (as described below) .

2.  At approximately the same time, Mr. Patel also formed the Debtor (P & P Investments, LLC  ("P & P")),  for purposes of holding title to the land on which Prima conducts its business.

3.  On or about July 13, 2009, Prima and P&P jointly borrowed funds from Compass Bank and others to complete the service station, convenience store and related amenities (the "business").

4.  The business is located at 1735 Cooper Road, Chandler, Arizona, also known as tax parcel no. 303-31-221 (the "Real Property") and more fully described below:

Lot 2, A RE-PLAT OF LOT 7 OF CHANDLER AIRPORT CENTER – PHASE 1, according to Book 1033 of Maps, Page 36, records of Maricopa County, Arizona.

5. The Real Property is owned by P & P, and is subject to the following:

A. A first deed of trust in favor of Compass Bank ("Compass") which secures a note in the original amount of $2,267,500 dated July 13, 2009 and recorded in the Office of the Maricopa County Recorder as document no. 20090642752.

B. A second deed of trust in favor of Southwest Business Financing Corporation (now, the Small Business Administration)[2] which secures a note in the original amount of $1,289,000 dated July 1, 2009 and recorded in the Office of the Maricopa County Recorder as document no. 20090642757 which note was thereafter modified to reflect a principal balance of $1,125,000 by a modification agreement dated June 15, 2010, and recorded in the Office of the Maricopa County Recorder as document no. 20100514902.

C. A third deed of trust in favor of BP West Coast Products, LLC ("BP")[3] which secures a note in the original amount of $690,000 dated July 1, 2009 and recorded in the Office of the Maricopa County Recorder as document no. 20090642757.

6. Compass is the only entity with an alleged secured claim against personal property that is used on the Real Property which security interest purportedly includes (1) accounts, (2) chattel paper, (3) general intangibles and (4) goods including "inventory and

---

[2] The beneficial interest in the subject deed of trust was assigned to the Small Business Administration ("SBA") pursuant to an assignment dated July 1, 2009, and recorded in the Office of the Maricopa County Recorder as document no. 20090642763. In the interest of clarity, the Southwestern Business Financing Corporation / SBA creditor position will simply be referred to as the "SBA."

[3] The Debtor is informed that Tesoro Refining & Marketing Company, LLC purchased the interests of BP and therefore succeeded to the rights of BP. In the interests of simplicity the creditor will be identified herein below as "BP / Tesoro."

1 accessions." *See* UCC-1 Financing statement recorded in the office of the Arizona

2 Secretary of State at 200915866461.

3     7.   To the extent SBA or BP/Tesoro claim any interest in the personal property

4 utilized on the Real Property, no UCC-1 was filed on their behalf with the Arizona

5 Secretary of State to the best of the Debtor's knowledge.

6     8.   BP/Tesoro and the SBA are apparently unsecured creditors of this estate.[4]

7     9.   Compass is secured only to the extent of any properly perfected security

8 interest.

9     10.  The debts of the Debtor are guaranteed, in part, by Sunil Patel and his wife, Priti

10 Patel (collectively the "Patels").

11     11.  The business that was established on the Real Property was established

12 predicated on the fact that a nearby developer (Silk & Stewart Development Group) had

13 received permission to develop the land largely surrounding the Real Property.

14     12.  Unfortunately, during the recession beginning in approximately 2008, the

15 subject developer was unable to, or elected not to, proceed with the development of the

16 surrounding real property.

17     13.  Consequently, the sales projected for the subject location were less than

18 anticipated.

19     14.  The Debtor's obligation to Compass is reflected in a note dated June 26, 2009

20 (the "Compass Note") in the original amount of $2,267,500.

21     15.  The Debtor made its payments to Compass and other creditors faithfully until

22 approximately November 1, 2012.

23     16.  Pursuant to the terms of the Compass Note, the monthly payments to Compass

24 were fixed at $14,784.00 per month.

25 _____

[4]

26     Because this case is in its early stages, the information relative to the status of creditors
is stated upon information and belief and is not intended to constitute a judicial admission of

27 any kind. The Debtor expressly reserves the right to properly challenge the existence, the
security, the amount, and the priority of any claim against the estate through proper

28 proceedings under Rule 7001 and/or under 11 U.S.C. §506.

17. The rate of interest under the Compass Note is fixed at 6.125% (subject to certain adjustments) and was amortized over 26 years and is ultimately due on April 26, 2035.

18. Thus, as of the filing the bankruptcy case, there remains a total of approximately 20 years of amortization remaining under the terms of the loan.

19. Mr. Patel was funding a large part of the obligation to Compass (a total equity contribution of over $500,000.00) until the last payments were made to Compass and the SBA in 2013.

20. Additionally, Prima had borrowed over $500,000 from his brother Vilin Patel in order to continue the operations of the business on the Real Property.

21. On or about February 19, 2013, predicated on Compass' claim that there was a default on the Debtor's obligations, Compass offset against the accounts of Prima, Sunraj, the Patels and the Debtor in the following amounts:

| | | |
|---|---|---|
| A. | Sunraj | $ 12,498.27 |
| B. | The Patels | $ 17,770.61 |
| C. | Sunraj | $ 40,416.84 |
| D. | Prima | $ 103,072.79 |
| E. | P & P | $ 1,188.62 |
| F. | The Patels | $ 17.62 |
| G. | Prima | $ 24,682.00 |
| H. | Sunraj | $ 30,728.00 |

for a total of $199,645.75 (the "Offset").

22. The Offset caused the Debtor and Prima great difficulty and threatened the very existence of the subject companies.

23. The Debtor's ability to pay its obligations to creditors is hinged on Prima's ability to successfully operate.

24. Prima filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code (reorganization) on July 24, 2013 (the "Prima Bankruptcy Case").

25. At the time of filing the Prima Bankruptcy Case, Prima was current in making its payments to all creditors with the exception of the obligation to Compass and the SBA.

26. The Offset prompted the filing of the Prima Bankruptcy Case.

27. After the filing of the Prima Bankruptcy Case, Compass sued P&P, Sunraj, and the Patels and sought the appointment of a receiver for Sunraj and P & P.

28. Compass also filed a motion for stay relief in the Prima Bankruptcy Case and sought a court order to permit, among other things, Compass to proceed against the Real Property as well as against the equipment and inventory in the hands of Prima.

29. As a result of early negotiations with Compass in the Prima Bankruptcy Case, Prima paid approximately $8,300 per month post petition to Compass Bank in order to maintain the lines of communications open.

30. Notwithstanding, Prima was compelled to participate in an evidentiary hearing on March 11, 2014.

31. The hearing was for purposes of addressing Prima's continued use of cash collateral.

32. The upshot of the entire hearing was that Prima agreed to pay (and has paid) the sum of $7,300 to Compass[5] and the Court granted a replacement lien on the Debtor's post petition inventory.

33. Prima was then free to hire appraisal experts to, among other things, value the Debtor's assets, make financial projections, or provide expert testimony during the course of Prima's reorganization efforts.

34. After much litigation and ultimate negotiation, Prima and Compass arrived at a resolution which was memorialized in a plan support agreement dated December 3, 2014 (the "Prima Agreement").

---

[5] This represented the cash Prima had on hand as of the date of the filing of the Prima Bankruptcy Case.

35. The Prima Agreement was approved by the Bankruptcy Court in the Prima Bankruptcy Case on January 7, 2015 (the "Compass / Prima Order").

36. The Compass / Prima Order provided for a resolution of, among other things, the disputes between Prima and Compass including a resolution to Compass' objection to the Prima Plan of reorganization ("Prima Plan"), and the stay relief motion.

37. The Prima Agreement also included Compass' agreement to support Prima's Plan (as modified) and further, specifically accommodated P&P's eventual bankruptcy filing.

38. Contemporaneous with the filing of this Disclosure Statement and Plan, the Debtor is seeking to consolidate the present case with the Prima Bankruptcy Case so that both estates can successfully reorganize.

39. Several events have occurred which suggest that the Debtor's prospects have since changed and which further support the Debtor's claim that it will be able to reorganize and pay a substantial recovery to its creditors:

A. The approval of the Prima Agreement and the entry of the Compass / Prima Order.

B. Additionally, BP /Tesoro made certain accommodations to the Prima which has resulted in an increase in monthly net revenue.

C. Prima's business is becoming better known and more often frequented in the community.

F. **Bankruptcy Filing**

On May 22, 2015, the Debtor filed the within bankruptcy case. Bankruptcy became necessary as the Debtor is the owner of the Real Property which property could not be administered in the Prima Bankruptcy Case.

G. **The funding of the Plan of Reorganization**

The Plan of reorganization will be funded through Prima's operations. The feasibility of the Plan depends on Prima's ability to continue in operation since the obligations on the Real Property are funded through Prima's operations. Attached hereto

1   as Exhibit A is a summary of Prima's income and expenses since the filing of the Prima

2   Bankruptcy Case. As those figures represent, Prima has successfully operated post petition.

3   With the exception of a February 2014, anomaly resulting from having to pay over $12,000

4   in real estate taxes and also having to pay $15,600 in trustee's fees to the United States

5   Trustee, Prima has operated profitably and has accumulated over $77,000 in operating cash

6   as of April 2015. Maintaining operating cash is essential to Prima's present operations as

7   weekend purchases for gasoline must be prepaid (sometimes in excess of $104,000 on

8   holiday weekends). With an average monthly profit over expenses, the Debtor believes that

9   Prima will not only be able to continue to meet current expenditures, but that Prima will

10   be able to service its obligations to the Debtor's primary creditor Compass Bank, under the

11   terms of the Prima Agreement. In doing so, the Debtor estimates that both the Debtor and

12   Prima will be able to not only emerge from the present bankruptcy cases on a stronger

13   financial footing, but that they will be able to pay a substantial sum to pre-petition

14   unsecured creditors.

15         **H**. <u>**Classification and Treatment of Claims**</u>

16         The classification and treatment of claims is set forth in the Plan terms which are set

17   forth in their entirety below.

18         **I**. <u>**Miscellaneous Disclosures**</u>

19         <u>Tax Consequences</u>.     The Plan may have an impact on the tax liability of the

20   creditors, parties in interest and the Debtor. As to the Debtor, the tax effect is likely to be

21   the ability to apply long term capital losses to future tax liability. Creditors are advised to

22   seek advice from their respective tax consultant in order to determine the effect of the Plan

23   on any particular creditor.

24         <u>Stay of Enforcement Proceedings</u>.     Pursuant to 11 U.S.C. § 362(a), all acts by

25   creditors to collect claims which arose prior to the filing date have been stayed. Upon

26   confirmation of the Plan, the claims of creditors of the Debtor will be discharged except

27   to the extent of payments due under the Plan. In addition, the Plan will provide for a

28   continuing stay against actions against the Debtor as long as the Debtor substantially meets

the terms of the Plan. Any defaults under the Plan may be addressed by creditors and the Debtor as set forth herein below.

Liquidation Analysis.   Section 1129 of the bankruptcy code requires that each dissenting class of claims or interests receive or retain as much on such claim as a creditor would receive under a Chapter 7 liquidation proceeding.

As of the latest reports available from the Debtor, the Debtor had the following sources of assets from which to pay creditors upon liquidation:

**SOURCE OF FUNDS**:

| | |
|---|---|
| Current cash on hand | 3,500.00 |
| Real property | 1,000,000.00 |
| Personal property | 0.00 |
| Accounts Receivable / Inventory[6] | 0.00 |
| **Total Sources of Funds**: | 1,003,500.00 |

**USE OF FUNDS:**

**Payments to Priority and Secured Creditors:**

| | |
|---|---|
| Richardson & Richardson, P.C. (Current est. in excess of retainer) | 5,000.00 |
| Post petition taxes | 0.00 |
| Post petition current payables | 0.00 |
| Amount payable to secured creditors on account of security interests | 1,000,000.00 |
| **Total Expenses** | 1,005,000.00 |
| Amount available for unsecured creditors upon liquidation | 0.00 |

---

[6]
Accounts Receivable and Inventory are listed at a zero value.  If the company were liquidated, Compass Bank would receive all funds generated from these sources.

1    If there is substantial opposition to the Plan or the disclosure statement, it is

2 expected that administrative expenses (including attorneys' fees) will rise significantly and

3 may significantly reduce distributions to unsecured creditors.

4    Risk Factors.

5    In this case, the ability to generate funds with which to pay creditors is largely

6 dependent on the Debtor's operations. An equally major risk, would be a refusal on the

7 part of creditors to approve the Plan.

8    Feasibility of Plan / Projections

9    The feasibility of the Plan depends on Prima to continue operations into the future.

10 While there may be a small amount of appreciation in the real property, the Debtor does

11 not rely substantially on that factor. Rather, due to the Debtor's having reduced costs and

12 having redoubled its efforts to increase bookings, the Debtor looks to remain in business

13 for years and to do so on a financially healthy basis.

14    Objection to Claims

15    The Debtor reserves the right to object to any claim regardless of whether the claim:

16 (1) is listed in the Debtor's schedules as disputed or undisputed, (2) has been filed in this

17 case, (3) has not been filed in this case and/or (4) that has been paid without authorization

18 of the Court.

19    Proponent's Recommendation.

20    Plan proponent urges acceptance of this Plan by all holders of claims and interests.

21 This Plan provides a speedy and efficient way of resolving this matter without the

22 continued multiplication of administrative costs and expenses. Indeed, in the event that the

23 Debtor is unable to get the voluntary cooperation of its creditors, the Debtor proposes to

24 "accomplish through the judicial process what the parties were unable to accomplish

25 [outside of bankruptcy] - - [provide] a fix of something that has the potential to do the

26 greatest good for the most people." J. M. Marlar, *Getting Confirmed: Ten Tips to Help

27 Nudge Your Debtor Across the Finish Line*, Norton Bankr. L. Advisor, vol 4 (Spring 2011).

28

# PLAN OF REORGANIZATION

## J.  The Plan of Reorganization

The following contains the terms of the Plan of reorganization that is being submitted by the Debtor. It reflects the treatment of the allowed claims and interests under the Plan. It will be attached to the order approving the Plan. All claims against the Debtor, as defined herein and in Section 101(5) of the Bankruptcy Code, of whatever nature, whether or not scheduled, liquidated, or unliquidated, absolute or contingent, including all claims arising from the rejection of executory contracts and all classes of interest in the Debtor, shall be bound by the provisions of the Plan.  The order of confirmation shall operate to discharge the Debtor from any debt or claim that arose before the date of confirmation except as to Plan terms which expressly provide other wise or as otherwise provided under 11 U.S.C. §1141(d)(6). The Debtor shall also receive and retain after confirmation, any and all rights accorded to debtors-in-possession generally under the terms of the Bankruptcy Code and Bankruptcy Rules.

The definitions set forth above shall apply to the terms of the Plan as set forth below. For purposes of payment of claims under the Plan, claims are divided into the following classes:

### 1.  Classification of Claims

The classification of claims and interest under the Plan are as follows:

### CLASS 1

Class 1 shall consist of all claims for administrative expenses allowed pursuant to § § 503 and 330 of the Code and claims entitled to priority in accordance with §507(a)(1), through (6).  The Debtor believes that the claim of Richardson & Richardson, P.C. and potentially, the accountant, Harish Shah, will be the only claims in this class.  In this class there are no known §§ 507(a)(2), 507(a)(3), 507(a)(4), 507(a)(5) and 507(a)(6). The claim of these creditors will be paid on such terms as the parties may agree or upon confirmation. This class is unimpaired.

**CLASS 2**

Class 2 shall consist of the secured claims of all creditors and taxing authorities having an allowed secured claim against the Real Property or Personal Property of the Debtor. To the extent the County has a lien for taxes on any real or personal property of the Debtor, they will be paid when due under non-bankruptcy law. The Debtor believes that there are no Class 2 claims.

**CLASS 3**

This class shall consist of all claims entitled to priority under 11 U.S.C. § 507(a)(8). The Debtor believes that there are no Class 3 claims.

**CLASS 4A**

Class 4A shall consist of the allowed secured claim of Compass Bank.

**CLASS 4B**

Class 4B shall consist of the claim of the Small Business Administration ("SBA"). The SBA appears to have no equity and no security interest in any assets of the estate and will share pro rata with the class of unsecured creditors. The SBA's obligation is guaranteed by others and is impaired by the Plan.

**CLASS 4C**

Class 4C shall consist of the allowed secured claim of BP / Tesoro arising from that certain Loan Agreement (West of the Rockies) dated August 7, 2009 and related Secured Promissory Note dated August 7, 2009 in the original principal amount of $690,000 to the extent it is allowed as a secured claim. This obligation is apparently the subject of a third party guarantee. The Debtor believes that BP / Tesoro's claim is an unsecured claim due to the lack of equity in the Real Property. This claim is impaired under the Plan.

**CLASS 5**

This class intentionally left blank.

**CLASS 6A - COMMON CREDITORS**

This class shall consist of the claims held by Common Creditors as defined above.

**CLASS 6B - GENERAL UNSECURED CREDITORS**

This class shall consist of all allowed unsecured claims $5,000 and above.

**CLASS 6C - SMALL CREDITORS**

This class shall consist of all allowed unsecured claims $5,000 and below.

**CLASS 7**

Class 7 consists of the holders of an interest in the Debtor.

**2.    Treatment of Claims**

**Class 1**:        The holders of class 1 claims (administrative claims), as allowed by the Court, shall be paid in full on the effective date or at such later date as such administrative creditors may agree. The administrative claims of this class shall be payable upon an order approving payment in the ordinary course but in no event later than the effective date. Class 1 claims shall be paid before the commencement of payment to any class of unsecured creditors. Applications for payment of this class may be made and allowed at any time. This class is unimpaired.

**Class 2**:        The holders of class 2 claims shall be paid the allowed amount of their secured claims the earlier of the date such claims become due in the ordinary course or within 150 days after the effective date of the Plan. Such Claimants shall retain their liens and be deemed unimpaired. There do not appear to be any class 2 Creditors.

**Class 3**:        The holders of class 3 claims (administrative priority tax claims) shall be paid on account of their claims, the principal amount of their allowed claims together with interest at the statutory rate beginning on the effective date in equal monthly installments over forty-eight (48) months. The non-priority portion of any Class 3 claim shall be treated as a Class 6 claim.  For any such claim that is secured by a lien on the Debtor's property, such lien shall be unaffected by the Plan. The Debtor believes that there are no Class 3 claims.

**Class 4**:        Holders of class 4 claims will retain their pre petition security interests in any of their identifiable collateral to the extent of the value thereof as of the date of the petition. The holders of all Class 4 claims will be paid in monthly installments of principal

and interest on terms specified below, but only to the extent of the value of the security interest in the Debtor's property, if any. Upon payment of allowed class 4 claims according to the Plan, the particular creditor shall release any lien, security interest or judgment that secures payment under state law. Class 4 creditors who are deemed to be wholly unsecured shall release any claim of a security interest in the Debtor's property.

**Class 4A - Compass Bank (Commercial Loan)**:

The obligation to Compass shall be paid in accordance with the Prima Agreement as approved by the Bankruptcy Court in the Prima Bankruptcy Case. This claim is impaired by agreement between the parties.

**Class 4B - SBA**:

This claim is believed to be wholly unsecured. This claim shall be paid in accordance with the treatment afforded Class 6A. This claim is impaired.

**Class 4C - BP / Tesoro**:

This claim is believed to be wholly unsecured. This claim shall be paid in accordance with the treatment afforded Class 6A. This claim is impaired.

**Class 5:**

This class intentionally left blank.

**Class 6A - Common Creditors**:

Holders of class 6A claims shall be paid pro rata a total of $175,000 without interest in 120 monthly installments without interest beginning the latter of sixty (60) days after the effective date without interest, or beginning on the first of the month succeeding the date upon which the claims in class. Payments made by a Related Debtor to a Common Creditor shall be credited to amounts payable under this Plan. Thus, payments made by Prima under the Prima Plan to a Common Creditor shall constitute a payment under this Plan. This class is impaired under the Plan.

**Class 6B - General Unsecured Creditors**:

Holders of class 6B claims shall be paid 50% of their claims without interest in 60 monthly installments without interest beginning the latter of sixty (60) days after the

effective date without interest, or beginning on the first of the month succeeding the date upon which the claims in Class 1 have been satisfied. This class is impaired under the Plan.

**Class 6C - Small Creditors**:

Holders of class 6B claims shall be paid 50% of their claims without interest in 24 monthly installments without interest beginning the latter of sixty (60) days after the effective date without interest, or beginning on the first of the month succeeding the date upon which the claims in Class 1 have been satisfied. This class is impaired under the Plan.

**Class 7:**

The holders of Class 7 interests shall not receive or retain any interest in the Debtor on account of their interests. Rather the holders of Class 7 interests shall have the option of (1) guaranteeing, per a post petition guarantee of Plan payments, (2) paying $50,000 of the amounts to be paid to Class 6 (A, B, or C) creditors or (3) contributing $40,000 in cash on the effective date of the Plan. The option may be exercised as of the date of the confirmation order which option shall confirm which election the holders of Class 7 interests have elected.

3. **Implementation of the Plan**

a. Upon the effective date of the Plan, title to the assets of the estate shall vest in the Debtor. The Debtor shall immediately take all steps necessary to implement the Plan terms in accordance with the order of the Court or in accordance with the law generally. That may include, but is not limited to, executing such documents or agreements as are necessary to effectuate the Plan.

b. Upon the effective date of the Plan, the Debtor shall have all the right, power and authority to operate the business of the Debtor according to the business judgment of the management of the Debtor without further order of the Court. The Debtor's exercise of discretion operating the Debtor shall not be disturbed or subject to challenge except for gross negligence or willful waste of the assets of the Debtor. The Debtor shall possess the unfettered right and authority to object to any claim, or

1  compromise any claims against the Debtor whatsoever despite any treatment that may

2  otherwise be afforded according to the terms of the Plan.

3        c.    The Debtor shall be entitled to notice of any alleged defaults under the

4  Plan. Notice shall be given to the Debtor via hand delivery or by certified U.S. Mail return

5  receipt requested and a copy shall be mailed to counsel for the Debtor. The Debtor shall

6  thereafter have ten days in which to cure any alleged default. Cure of the default within ten

7  days shall not result in an obligation to pay any fees, late fees, costs or expenses on the part

8  of the creditor claiming default.

9        d. Any claim asserted against the Debtor under the Plan shall be asserted not

10  later than three years after the Effective Date or three years after any alleged default under

11  the Plan pertaining to the complainant, which ever is longer.

12        e.    Upon confirmation of the Debtor's Plan, the Debtor shall be operated by

13  Sunil Patel.

14        f.    In making distributions under the Plan, the Debtor shall not be obligated

15  to pay any amounts due which total less than $5.00. Such claims shall be deemed

16  discharged under the Plan.  For any claim for which the total distribution on account of

17  such claim totals $100.00 or less, the Debtor may pay such obligation as soon as is

18  convenient to the Debtor but no later than is required under the Plan.

19        g.    At any time after confirmation of the Plan, the Debtor, without motion

20  or further order of the Court, may obtain a loan from any source available to the Debtor in

21  order to facilitate or complete payments due under the Plan.

22        h.    At any time after confirmation of the Plan, the Debtor may retain any

23  professionals (including attorneys, accountants, etc.) and may pay such professionals on

24  terms such as the parties may agree. The Debtor may do so without motion or further order

25  of the Court.

26      **4.**   **Miscellaneous Plan Terms**

27        a.    Upon the effective date of the Plan, the automatic stay of Code §

28  362(a) shall remain in full force and effect and all creditors shall be enjoined from

1  continuing with or commencing any action or proceeding against the Debtor, the properties,
2  or other Plan assets, provided that such stay shall not preclude any party's rights to the
3  enforcement of the terms of the Plan (*see* paragraph d below).

4        b.        Except for the holders of administrative claims whose agreement with
5  the Debtor expressly provides otherwise, no distribution shall be made hereunder or on
6  account of, nor shall any claimant be allowed any interest, default interest, costs, expenses,
7  or attorneys' fees, except as provided in this Plan.

8        c.        Upon the entry of the order of confirmation, the Plan shall bind the
9  Debtor, any entity acquiring or being distributed any property under the Plan, any creditor,
10  any party in interest, whether or not their claims and interests are impaired under the Plan
11  and whether or not they have accepted the Plan.

12        d.        If the Debtor, a creditor or party in interest fails to comply with the
13  terms of the Plan, the holders of claims in any class materially harmed thereby may proceed
14  against the offending party in order to enforce the Plan and / or collect the obligations of
15  the Debtor hereunder by bringing or taking any appropriate action under federal or state
16  law, in bankruptcy court or other court of competent jurisdiction.  Any party proceeding
17  to enforce a term of this Plan shall be entitled to recovery of its reasonable attorney fees
18  and costs.

19        e.        In the event Plan payments are tendered to a creditor, and that creditor
20  refuses payment for whatever reason, that creditor's claim shall be deemed satisfied and
21  fully paid under the Plan. In such event, the funds that were otherwise payable to such
22  creditor shall devolve to the benefit of the Debtor.  Payments payable under the Plan shall
23  be sent to the addresses listed on the master mailing list (as such exists on the date of
24  confirmation) for the particular creditor (and not to counsel or collection agents). Creditors
25  are responsible to notify the Court and the Debtor of any change in address and payments
26  shall thereafter be tendered to the address provided by such creditor.  Return of a payment
27  from the U.S. Postal service to the Debtor shall operate to conclusively demonstrate that
28  a payment was refused. Also a creditor's failure to negotiate or apply any payment sent to

a creditor after 180 days of the date of mailing or delivery of such payment, shall operate to conclusively demonstrate that a payment was refused. Any other evidence of a creditor's refusal of payment may also be used to demonstrate that a creditor has refused payment.

f.      Nothing contained herein shall preclude the Debtor from seeking the stay of any action against any claimant or creditor to aid in the effectuation of the Plan. This may include seeking a stay order under §105 to preclude any creditor from pursuing guarantors or other principals of the Debtor.

**5.   Claims Subject to Dispute; Objections to Claims**

a.      The Debtor and any creditor or party in interest may file with respect to any claim (a) an objection to such claim; (b) a motion to determine the extent, priority, or amount of any secured or unsecured claim; (c) a complaint to determine the validity, priority, extent of a lien, or other interest in the properties; or (d) a motion to subordinate an unsecured claim prior to the objection deadline.  Copies of all objections, motions, or complaints must be timely served in accordance with the applicable rules.

b.      All claims shall be subject to dispute and claim objections shall be resolved in accordance with the Bankruptcy Rules. The failure to have timely filed a claim in accordance with any court order fixing a bar date for filing claims shall preclude any distributions from the estate for any such untimely claims.  Creditors and/or interested parties may object to claims for a period of fifteen (15) days after the effective date (the "Deadline").  If an objection, motion or complaint is filed with respect to any such claim prior to the Deadline, that claim can only be allowed by order of the court.  If, however, no objection, motion or complaint is filed with respect to such claims prior to the deadline, the claim shall be deemed to be an allowed claim. Nothing contained in this paragraph shall operate to excuse any creditor from having timely filed a claim as previously ordered by the court. Additionally, nothing contained in this paragraph shall allow an objection to a claim where the time for objecting to such claim has already expired.

The Debtor may seek valuations of the property purportedly securing claims of the SBA and BP/ Tesoro under §506 as the Debtor, in its discretion, may deem necessary to establish the lack of security for such claims.

### 6.   **Modification of the Plan**

Prior to the order of confirmation, the Debtor may propose amendments or modifications to the Plan in accordance with § 1127(a) of the Code.  After confirmation, the Debtor may amend the Plan in the manner provided by § 1127(b) of the Code. However, if, after such amendments, all classes of creditors remain unimpaired pursuant to the Code, the amended Plan need not be served upon creditors and interested parties. The Court may, at any time, so long as it does not materially or adversely affect the interest of the creditors, remedy any defects or omissions or reconcile any inconsistencies in the Plan or in the order of confirmation, and in such manner as may be necessary to carry out the purposes and effect of the Plan.

### 7.   **Retention of Jurisdiction**

The Court shall retain jurisdiction over this Plan, creditors and interested parties until all claims subject to dispute have been determined and all litigation is terminated.  The Court shall also retain jurisdiction to ensure that the purpose and intent of this Plan is carried out, to approve payment of administrative claims, to modify this Plan, to correct any defect, to cure any omission or reconcile any inconsistencies in this Plan or the order of confirmation, to address the estate's right or claim to any property of the estate or of property conveyed by the estate, to enter any orders necessary to carry out the Plan, to enter an order terminating the case, to determine all disputes and controversies arising under the Plan, to enter stay orders precluding actions against third parties under §105 and for other proper purposes.  The court shall also retain jurisdiction to hear and determine all claims against the Debtor, including claims allowed for voting purposes at the time of confirmation and to enforce all causes of action which may exist on behalf of the Debtor.

DATED this _22nd_ day of May, 2015.

RICHARDSON & RICHARDSON, P.C.

By___/s/ WRR 009278_____
William R. Richardson
1745 South Alma School Road
Corporate Center • Suite 100
Mesa, Arizona 85210-3010
Attorneys for Debtor

The foregoing Plan of reorganization is adopted by the Debtor

Sunil Patel, Managing Member

ORIGINAL of the foregoing electronically
filed this _22nd_ day of May, 2015 and a
COPY mailed this same date to:

United States Trustee
230 N. First Avenue
Suite 204
Phoenix, AZ 85003-1706

By__/s/ajc_____
Z:\DOC\DOC L-Z\P\Patel\P&P Land Holdings\Pleadings\Ch 11 Plan\POR DST.wpd

# EXHIBIT "A"

# PRIMA INVESTMENTS, INC (DIP)
## DEBTOR IN POSSESSION
# STATEMENT OF REVENUES AND EXPENSES
## INCOME TAX BASIS

| | 1/31/13 | 2/28/13 | 3/31/13 | 4/30/13 | 5/31/13 | 6/30/13 | 7/31/13 | 8/31/13 | 9/30/13 | 10/31/13 | 11/30/13 | 12/31/13 | YTD Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | | | | | | | |
| Sales-Taxable | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12,389.35 | 54,387.17 | 53,475.48 | 58,402.50 | 53,949.27 | 53,709.24 | 286,313.01 |
| Sales-Non Taxable | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6,279.69 | 28,874.14 | 26,495.00 | 27,802.20 | 25,853.90 | 23,390.88 | 138,695.81 |
| Sales-Car Wash | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 901.00 | 4,004.00 | 3,697.00 | 6,059.00 | 4,172.00 | 3,001.00 | 21,834.00 |
| Sales-Lottery | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 4,311.00 | 22,816.00 | 21,141.00 | 18,673.00 | 18,479.00 | 32,178.00 | 117,598.00 |
| Sales-Gasoline | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 187,422.80 | 761,856.57 | 728,872.30 | 845,617.85 | 795,432.32 | 775,614.17 | 4,094,816.01 |
| Revenue-Display Allowance & | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,016.74 | 0.00 | 2,814.81 | 2,707.98 | 0.00 | 8,539.53 |
| Rebate-2% | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,963.98 | 0.00 | 0.00 | 0.00 | 0.00 | 2,963.98 |
| Other Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 228.20 | 0.00 | 239.70 | 0.00 | 700.00 | 1,167.90 |
| ATM Commission | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 390.00 | 388.05 | 427.05 | 503.10 | 483.60 | 2,191.80 |
| Less Returns & Allowances | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Sales** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 211,303.84 | 878,536.80 | 834,068.83 | 960,036.11 | 901,097.57 | 889,076.89 | 4,674,120.04 |
| **Cost of Goods Sold** | | | | | | | | | | | | | |
| Purchases | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (23,932.90) | (30,182.59) | (73,774.59) | (69,113.34) | (48,051.77) | (66,031.83) | (311,087.02) |
| Cost of Lottery | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (4,052.34) | (21,447.04) | (19,872.54) | (17,552.62) | (17,370.26) | (30,247.32) | (110,542.12) |
| Purchases-Gasoline | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (199,776.95) | (757,237.88) | (646,911.75) | (816,602.75) | (768,295.02) | (729,554.54) | (3,918,378.89) |
| Purchases-Store Supplies | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (661.69) | (487.08) | (986.72) | (877.71) | (848.64) | (3,861.84) |
| **Total COGS** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (227,762.19) | (809,529.20) | (741,045.96) | (904,255.43) | (834,594.76) | (826,682.33) | (4,343,869.87) |
| **Gross Profit** | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (16,458.35) | 69,007.60 | 93,022.87 | 55,780.68 | 66,502.81 | 62,394.56 | 330,250.17 |
| **Operating Expenses** | | | | | | | | | | | | | |
| Advertising | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (4,559.97) | 0.00 | (1,509.61) | (1,457.27) | 0.00 | (7,526.85) |
| Autos and Truck Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (63.00) | (125.10) | (188.10) |
| Bank Charges | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (30.00) | 0.05 | (903.90) | (85.04) | (1,002.77) | (1,092.89) | (3,114.55) |
| Cash Over / (Short) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5.34) | (1.29) | (0.86) | (1.28) | 0.50 | 10.96 | 2.69 |
| Credit Card Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (328.24) | (347.23) | (252.48) | (118.20) | (23.57) | (1,069.72) |
| Insurance-General | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (1,238.50) | (849.25) | (849.25) | (849.25) | (849.25) | (4,635.50) |
| Insurance-Workers Compensat | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (866.00) | 0.00 | 0.00 | (866.00) |
| Janitoral Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (196.32) | (160.67) | (174.54) | (185.65) | (170.64) | (291.57) | (1,179.39) |
| Office Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (58.95) | (236.30) | (240.00) | (306.42) | (266.74) | (354.72) | (1,463.13) |
| Permits and Licenses | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (773.27) | (400.00) | (525.00) | (120.00) | (145.00) | (1,963.27) |
| Postage | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (0.21) | (12.61) | (2.92) | (3.32) | (3.12) | (21.16) | (43.34) |

See Accountants' Compilation Report

5

# PRIMA INVESTMENTS, INC (DIP)
## DEBTOR IN POSSESSION
# STATEMENT OF REVENUES AND EXPENSES
## INCOME TAX BASIS

| | 1/31/13 | 2/28/13 | 3/31/13 | 4/30/13 | 5/31/13 | 6/30/13 | 7/31/13 | 8/31/13 | 9/30/13 | 10/31/13 | 11/30/13 | 12/31/13 | YTD Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Repairs and Maintenance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (564.57) | (1,287.25) | (2,067.63) | (3,138.28) | (1,650.19) | (7,967.04) | (16,674.96) |
| Salaries-Employees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (4,417.50) | (10,589.00) | (9,821.38) | (9,150.00) | (9,036.13) | (14,993.50) | (58,007.51) |
| Salaries-Officers | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (1,846.15) | 0.00 | 0.00 | 0.00 | (1,500.00) | (4,500.00) | (7,846.15) |
| Security Service | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (77.06) | 0.00 | 0.00 | (77.06) | (154.12) |
| Supplies-General | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (399.82) | (367.02) | (350.83) | (544.56) | (145.84) | (279.74) | (2,087.81) |
| Taxes-Payroll | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (539.23) | (923.37) | (831.73) | (961.69) | (969.35) | (1,683.25) | (5,908.62) |
| Taxes-Property | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (11,971.73) | 0.00 | 0.00 | 0.00 | (11,971.73) |
| Telephone | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (355.17) | (261.22) | (264.51) | (264.97) | (260.94) | (260.94) | (1,667.75) |
| Trustee Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (325.00) | 0.00 | (325.00) |
| Utilities | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (3,434.23) | (3,286.34) | (3,324.15) | (3,187.08) | (2,995.32) | (16,227.12) |
| Waste Disposal | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (384.39) | (385.75) | (385.93) | (374.84) | (365.66) | (380.39) | (2,276.96) |
| Total Operating Exps | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (8,797.65) | (24,558.64) | (31,975.84) | (22,342.54) | (21,490.68) | (36,029.54) | (145,194.89) |
| Operating Income (Loss) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (25,256.00) | 44,448.96 | 61,047.03 | 33,438.14 | 45,012.13 | 26,365.02 | 185,055.28 |
| **Other Income (Expense)** | | | | | | | | | | | | | |
| Interest Income | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 7.81 | 2.94 | 0.91 | 0.02 | 0.02 | 0.02 | 11.72 |
| Accounting Allowance | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 6.93 | 30.46 | 29.95 | 32.71 | 30.21 | 30.08 | 160.34 |
| Royalty Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (4,145.43) | (2,486.55) | (4,313.18) | (4,163.64) | (3,920.73) | (19,029.53) |
| Total Other Income (Expen | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14.74 | (4,112.03) | (2,455.69) | (4,280.45) | (4,133.41) | (3,890.63) | (18,857.47) |
| Net Income (Loss) Before Taxes | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (25,241.26) | 40,336.93 | 58,591.34 | 29,157.69 | 40,878.72 | 22,474.39 | 166,197.81 |
| Net Income (Loss) | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ (25,241.26) | $ 40,336.93 | $ 58,591.34 | $ 29,157.69 | $ 40,878.72 | $22,474.39 | $166,197.81 |

See Accountants' Compilation Report

6

# PRIMA INVESTMENTS, INC (DIP)
## DEBTOR IN POSSESSION
# STATEMENT OF REVENUES AND EXPENSES
## INCOME TAX BASIS
## 12 Month Comparison For 2014

| | 1/31/14 | 2/28/14 | 3/31/14 | 4/30/14 | 5/31/14 | 6/30/14 | 7/31/14 | 8/31/14 | 9/30/14 | 10/31/14 | 11/30/14 | 12/31/14 | YTD Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | | | | | | | |
| Sales-Taxable | 51,940.10 | 50,397.61 | 57,468.91 | 55,733.77 | 56,537.44 | 51,739.86 | 53,320.95 | 54,198.64 | 53,156.98 | 58,825.29 | 53,658.87 | 54,646.42 | 651,624.84 |
| Sales-Non Taxable | 21,935.93 | 23,436.15 | 27,103.76 | 27,536.95 | 27,657.05 | 25,523.59 | 25,127.84 | 22,926.52 | 21,481.94 | 23,750.54 | 19,809.53 | 18,909.44 | 285,199.24 |
| Sales-Car Wash | 4,956.00 | 5,203.99 | 5,900.00 | 6,637.00 | 7,289.00 | 6,401.00 | 5,830.00 | 3,905.00 | 5,489.00 | 6,429.00 | 2,780.00 | 64,475.99 |
| Sales-Lottery | 19,950.00 | 27,955.00 | 25,074.00 | 22,590.00 | 20,852.00 | 17,624.00 | 15,792.00 | 16,717.00 | 18,595.00 | 22,325.00 | 18,385.00 | 24,092.00 | 249,951.00 |
| Sales-Gasoline | 803,294.1 | 781,498.3 | 832,080.3 | 851,027.01 | 840,410.75 | 797,975.21 | 848,536.76 | 835,488.71 | 769,208.90 | 791,915.59 | 652,126.50 | 536,543.09 | 9,340,105.3 |
| Revenue-Display Allowance & | 2,207.57 | 0.00 | 2,531.42 | 1,979.76 | 1,566.44 | 2,420.90 | 3,553.18 | 2,712.57 | 2,546.68 | 2,836.90 | 2,997.85 | 2,219.67 | 27,572.94 |
| Rebate-2% | 3,098.89 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 3,098.89 |
| Other Income | 439.50 | 0.00 | 0.00 | 238.60 | 0.00 | 0.00 | 254.50 | 22.54 | 0.00 | 261.10 | 0.00 | 0.00 | 1,216.24 |
| ATM Commission | 487.50 | 434.85 | 460.20 | 600.60 | 514.80 | 466.05 | 477.75 | 547.95 | 507.00 | 491.40 | 520.65 | 448.50 | 5,957.25 |
| Less Returns & Allowances | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Sales** | 908,309.6 | 888,925.9 | 950,618.6 | 966,343.69 | 954,827.48 | 902,150.61 | 952,892.98 | 936,518.93 | 869,152.50 | 905,894.82 | 753,927.40 | 639,639.12 | 10,629,201. |
| **Cost of Goods Sold** | | | | | | | | | | | | | |
| Purchases | (49,583.7 | (63,721.1 | (56,388.54 | (55,923.70) | (56,792.83) | (74,959.42) | (58,559.96) | (61,747.07) | (59,182.25) | (82,689.50) | (43,150.89) | (51,600.20) | (714,299.29) |
| Cost of Lottery | (18,753.0 | (26,277.7 | (23,569.56 | (21,234.60) | (19,600.88) | (16,566.56) | (14,844.48) | (15,713.98) | (17,479.30) | (20,985.50) | (17,281.90) | (22,646.48) | (234,953.94) |
| Purchases-Gasoline | (809,511. | (762,579. | (811,703.3 | (910,069.8 | (729,391.25) | (771,203.1 | (833,856.20) | (793,173.51) | (799,645.60) | (717,791.77) | (634,558.63) | (533,181.00 | (9,106,665.8 |
| Purchases-Store Supplies | (889.11) | (471.89) | (206.17) | (181.83) | (436.13) | (280.61) | 0.00 | (329.06) | (1,519.34) | (233.56) | (489.19) | (380.32) | (5,417.21) |
| **Total COGS** | (878,737. | (853,050. | (891,867.5 | (987,410.0 | (806,221.09) | (863,009.7 | (907,260.64) | (870,963.62) | (877,826.49) | (821,700.33) | (695,480.61) | (607,808.00 | (10,061,336. |
| **Gross Profit** | 29,571.75 | 35,875.60 | 58,751.08 | (21,066.31) | 148,606.39 | 39,140.84 | 45,632.34 | 65,555.31 | (8,673.99) | 84,194.49 | 58,446.79 | 31,831.12 | 567,865.41 |
| **Operating Expenses** | | | | | | | | | | | | | |
| Advertising | (4,545.04 | (39.85) | (79.70) | (1,364.32) | (1,584.50) | (1,645.57) | (1,621.79) | (1,456.36) | (1,526.98) | (1,457.98) | (1,437.13) | (1,623.48) | (18,402.70) |
| Autos and Truck Expense | (134.00) | (142.35) | (75.00) | (151.58) | (158.01) | (80.00) | (155.00) | (75.00) | (147.75) | (135.00) | (421.10) | (206.00) | (1,880.79) |
| Bank Charges | (1,152.19 | (1,105.34 | (1,124.76) | (1,148.58) | (1,146.95) | (891.95) | (1,370.57) | (1,269.05) | (1,047.21) | (1,112.28) | (1,055.50) | (981.55) | (13,405.93) |
| Cash Over / (Short) | 0.46 | (6.29) | (53.72) | (0.92) | (0.14) | (4.52) | (4.13) | 0.92 | (1.42) | (46.93) | (12.37) | 0.05 | (129.01) |
| Casual Labor | (800.00) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (800.00) |
| Credit Card Fees | (6.63) | (48.80) | (3.82) | 0.00 | 0.00 | 0.00 | (1.53) | (21.88) | (50.57) | (46.68) | (167.77) | (148.71) | (496.39) |
| Dues and Membership Fees | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (300.00) | 0.00 | 0.00 | (300.00) |
| Insurance-General | 0.00 | 0.00 | (11,190.80 | (726.46) | (16,565.02) | (4,763.53) | 0.00 | 0.00 | (744.62) | 0.00 | 0.00 | 0.00 | (33,990.43) |
| Insurance-Workers Compens | 0.00 | (1,205.90 | 0.00 | (1,666.00) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (832.00) | 0.00 | 0.00 | (3,703.90) |
| Janitorial Expense | (368.24) | (203.78) | (200.56) | (196.65) | (229.96) | (279.36) | (241.82) | (232.92) | (274.41) | (217.90) | (226.99) | (335.44) | (3,008.03) |
| Legal and Professional | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (2,499.80) | 0.00 | (2,499.80) |
| Office Expense | (815.24) | (163.79) | (1,570.15) | (185.10) | (580.38) | (283.53) | (1,053.46) | (529.79) | (145.85) | (448.42) | (453.79) | (436.47) | (6,665.97) |

See Accountants' Compilation Report

5

# PRIMA INVESTMENTS, INC (DIP)
## DEBTOR IN POSSESSION
# STATEMENT OF REVENUES AND EXPENSES
## INCOME TAX BASIS
## 12 Month Comparison For 2014

| | 1/31/14 | 2/28/14 | 3/31/14 | 4/30/14 | 5/31/14 | 6/30/14 | 7/31/14 | 8/31/14 | 9/30/14 | 10/31/14 | 11/30/14 | 12/31/14 | YTD Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Permits and Licenses | 0.00 | (1,882.50) | (695.00) | 0.00 | (350.00) | 0.00 | 0.00 | (300.00) | 0.00 | 0.00 | (144.00) | (145.00) | (3,516.50) |
| Postage | (147.40) | (5.80) | (5.74) | (3.08) | (12.40) | (9.38) | (3.50) | (5.60) | (30.04) | (201.53) | 0.00 | (9.04) | (433.51) |
| Repairs and Maintenance | (3,229.24) | (1,337.40) | (1,852.45) | (4,682.06) | (3,812.14) | (2,867.98) | (2,196.18) | (2,480.92) | (2,241.60) | (3,927.94) | (9,466.79) | (3,079.48) | (41,174.18) |
| Salaries-Employees | (9,184.00) | (10,791.7) | (9,956.13) | (9,573.63) | (8,822.50) | (8,866.13) | (15,231.27) | (8,944.63) | (10,449.76) | (10,923.38) | (11,747.75) | (16,162.38) | (130,653.31) |
| Salaries-Officers | (3,000.00) | (3,000.00) | (3,000.00) | (3,000.00) | (3,000.00) | (3,000.00) | (4,500.00) | (3,000.00) | (3,000.00) | (3,000.00) | (3,000.00) | (4,500.00) | (39,000.00) |
| Security Service | 0.00 | 0.00 | (77.06) | 0.00 | 0.00 | (77.06) | 0.00 | 0.00 | (77.06) | 0.00 | 0.00 | (77.06) | (308.24) |
| Supplies-General | (475.98) | (157.66) | (862.70) | (90.42) | (393.69) | (757.14) | (10.78) | (551.56) | (376.78) | (90.42) | (1,039.23) | (94.31) | (4,700.67) |
| Taxes-Payroll | (1,303.66) | (1,475.73) | (1,325.30) | (1,253.90) | (1,214.58) | (1,080.60) | (1,808.50) | (1,128.81) | (1,211.59) | (1,255.55) | (1,341.27) | (1,799.93) | (16,199.42) |
| Taxes-Property | 0.00 | (11,971.7) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (12,336.44) | 0.00 | 0.00 | 0.00 | (24,308.17) |
| Telephone | (264.19) | (243.07) | (226.93) | (227.05) | (227.05) | 0.00 | (227.05) | (228.37) | (230.45) | (230.45) | (230.78) | (230.75) | (2,566.14) |
| Travel-Meal & Entertainment | 0.00 | (95.00) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (340.89) | (435.89) |
| Trustee Fees | (325.00) | (15,600.0) | 0.00 | (9,750.00) | 0.00 | 0.00 | (6,500.00) | (3,276.37) | 0.00 | (9,723.63) | 0.00 | 0.00 | (45,175.00) |
| Uniforms | 0.00 | (114.44) | (143.62) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (258.06) |
| Utilities | (3,004.44) | (3,045.78) | (3,119.44) | (3,196.44) | (3,214.91) | (3,226.42) | (2,705.00) | (3,369.70) | (3,416.29) | (3,006.61) | (2,919.51) | (3,034.77) | (37,259.31) |
| Waste Disposal | (436.66) | (436.66) | (440.42) | (439.69) | (439.18) | (444.59) | (444.35) | (443.07) | (441.79) | (440.81) | (437.73) | (437.73) | (5,282.68) |
| | | | | | | | | | | | | | |
| **Total Operating Exps** | (29,191.4) | (53,073.6) | (35,803.30) | (37,675.88) | (41,751.41) | (26,277.76) | (38,074.93) | (27,313.11) | (37,750.61) | (37,097.51) | (36,901.51) | (33,642.94) | (436,554.03) |
| | | | | | | | | | | | | | |
| **Operating Income (Loss)** | 380.30 | (17,198.0) | 22,947.78 | (58,742.19) | 106,854.98 | 10,863.08 | 7,557.41 | 38,242.20 | (46,424.60) | 47,096.98 | 21,545.28 | (1,811.82) | 131,311.38 |
| | | | | | | | | | | | | | |
| **Other Income (Expense)** | | | | | | | | | | | | | |
| Interest Income | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 | 0.02 | 0.03 | 0.01 | 0.01 | 0.02 | 0.01 | 0.22 |
| Accounting Allowance | 29.09 | 28.22 | 32.18 | 31.21 | 31.66 | 28.97 | 29.86 | 30.35 | 29.77 | 32.94 | 30.05 | 30.60 | 364.90 |
| Interest Expense | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (0.15) | 0.00 | (0.15) |
| Royalty Fees | (5,131.86) | (7,055.02) | 0.00 | (3,955.21) | (4,527.16) | (4,473.91) | (4,519.83) | (4,161.02) | (4,248.94) | (5,165.67) | (3,106.08) | (4,524.66) | (50,869.36) |
| Penalties | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (500.00) | 0.00 | 0.00 | 0.00 | 0.00 | (500.00) |
| | | | | | | | | | | | | | |
| **Total Other Income (Expe** | (5,102.75) | (7,026.78) | 32.20 | (3,923.98) | (4,495.48) | (4,444.92) | (4,489.95) | (4,630.64) | (4,219.16) | (5,132.72) | (3,076.16) | (4,494.05) | (51,004.39) |
| | | | | | | | | | | | | | |
| **Net Income (Loss) Before Taxes** | (4,722.45) | (24,224.8 0) | 22,979.98 | (62,666.17) | 102,359.50 | 6,418.16 | 3,067.46 | 33,611.56 | (50,643.76) | 41,964.26 | 18,469.12 | (6,305.87) | 80,306.99 |
| | | | | | | | | | | | | | |
| **Net Income (Loss)** | (8,722.45) | (24,224.8) | 22,979.98 | (62,666.17) | $102,359.50 | $6,418.16 | $ 3,067.46 | $ 33,611.56 | $(50,643.76) | $ 41,964.26 | $ 18,469.12 | $(6,305.87) | $80,306.99 |

See Accountants' Compilation Report

6

# PRIMA INVESTMENTS, INC (DIP)
## DEBTOR IN POSSESSION
# STATEMENT OF REVENUES AND EXPENSES
## INCOME TAX BASIS
## 12 Month Comparison For 2015

| | 1/31/15 | 2/28/15 | 3/31/15 | 4/30/15 | 5/31/15 | 6/30/15 | 7/31/15 | 8/31/15 | 9/30/15 | 10/31/15 | 11/30/15 | 12/31/15 | YTD Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales** | | | | | | | | | | | | | |
| Sales-Taxable | 49,401.02 | 49,136.61 | 54,655.86 | 54,451.81 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 207,645.30 |
| Sales-Non Taxable | 18,877.01 | 21,630.23 | 26,429.44 | 27,655.24 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 94,591.92 |
| Sales-Car Wash | 3,158.00 | 4,069.00 | 4,585.00 | 6,489.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 18,301.00 |
| Sales-Lottery | 28,709.00 | 35,228.00 | 24,532.00 | 24,795.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 113,264.00 |
| Sales-Gasoline | 408,615.6 | 458,160.0 | 539,256.9 | 514,862.91 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,920,895.6 |
| Revenue-Display Allowance & | 2,773.35 | 3,895.38 | 3,245.52 | 2,534.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 12,449.19 |
| Other Income | 0.00 | 371.10 | 0.00 | 274.90 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 646.00 |
| ATM Commission | 460.20 | 468.00 | 487.50 | 536.25 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,951.95 |
| Less Returns & Allowances | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| **Total Sales** | 511,994.2 | 572,958.3 | 653,192.3 | 631,600.05 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2,369,744.9 |
| **Cost of Goods Sold** | | | | | | | | | | | | | |
| Purchases | (78,607.7 | (45,056.8 | (61,288.71 | (49,276.31) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (234,229.65) |
| Cost of Lottery | (26,986.4 | (33,114.3 | (23,060.08 | (23,307.30) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (106,468.16) |
| Purchases-Gasoline | (387,498. | (424,805. | (523,180.8 | (488,265.7 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (1,823,750.3 |
| Purchases-Store Supplies | (376.85) | (356.76) | (272.46) | (232.20) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (1,238.27) |
| **Total COGS** | (493,469. | (503,333. | (607,802.1 | (561,081.5 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (2,165,686.3 |
| **Gross Profit** | 18,524.83 | 69,625.05 | 45,390.20 | 70,518.51 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 204,058.59 |
| **Operating Expenses** | | | | | | | | | | | | | |
| Advertising | (1,448.66 | (3,645.92 | (1,441.81) | (1,418.94) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (7,955.33) |
| Autos and Truck Expense | (348.00) | (141.24) | (1,393.51) | (192.47) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (2,075.22) |
| Bank Charges | (913.54) | (757.34) | (828.52) | (892.12) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (3,391.52) |
| Cash Over / (Short) | 0.84 | (100.14) | 2,297.15 | (2,091.05) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 106.80 |
| Credit Card Fees | (35.76) | (66.52) | (53.94) | (47.30) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (203.52) |
| Dues and Membership Fees | 0.00 | (95.00) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (95.00) |
| Insurance-General | 0.00 | 0.00 | (12,250.68 | (3,416.77) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (15,667.45) |
| Insurance-Workers Compens | (1,075.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (1,075.50) |
| Janitorial Expense | (232.92) | (215.13) | (292.20) | (247.15) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (987.40) |
| Legal and Professional | (1,565.00 | 0.00 | 1,565.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| Office Expense | (592.49) | (350.64) | (150.45) | (453.90) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (1,547.48) |
| Permits and Licenses | (472.25) | (1,882.50) | (778.74) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (3,133.49) |
| Postage | (17.71) | 0.00 | (107.03) | (5.75) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (130.49) |

# PRIMA INVESTMENTS, INC (DIP)
## DEBTOR IN POSSESSION
# STATEMENT OF REVENUES AND EXPENSES
## INCOME TAX BASIS
## 12 Month Comparison For 2015

| | 1/31/15 | 2/28/15 | 3/31/15 | 4/30/15 | 5/31/15 | 6/30/15 | 7/31/15 | 8/31/15 | 9/30/15 | 10/31/15 | 11/30/15 | 12/31/15 | YTD Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Repairs and Maintenance | (3,583.70) | (4,538.31) | (2,491.96) | (5,734.44) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (16,348.41) |
| Robbery Loss | 0.00 | 0.00 | 0.00 | (172.93) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (172.93) |
| Salaries-Employees | (10,047.3 | (9,577.63 | (8,714.51) | (9,390.00) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (37,729.52) |
| Salaries-Officers | (3,000.00) | (3,000.00) | (3,000.00) | (3,000.00) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (12,000.00) |
| Security Service | 0.00 | 0.00 | (77.06) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (77.06) |
| Supplies-General | (254.07) | (323.03) | (567.52) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (1,144.62) |
| Taxes-Payroll | (1,396.08 | (1,378.43 | (1,192.46) | (1,234.23) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (5,201.20) |
| Taxes-Property | 0.00 | 0.00 | (12,336.44 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (12,336.44) |
| Telephone | (230.75) | (231.25) | (225.36) | (225.36) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (912.72) |
| Trustee Fees | (9,750.00) | 0.00 | 0.00 | (9,750.00) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (19,500.00) |
| Utilities | (2,823.39 | (3,066.79 | (2,990.77) | (2,550.00) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (11,430.95) |
| Waste Disposal | (473.74) | (463.86) | (463.04) | (461.91) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (1,662.55) |
| **Total Operating Exps** | (38,260.1 | (29,833.7 | (45,666.78 | (41,111.39) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (154,672.00) |
| **Operating Income (Loss)** | (19,735.2 | 39,791.32 | (276.58) | 29,407.12 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 49,186.59 |
| **Other Income (Expense)** | | | | | | | | | | | | | |
| Interest Income | 0.01 | 0.01 | 0.02 | 0.01 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.05 |
| Accounting Allowance | 27.66 | 27.52 | 30.61 | 30.49 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 116.28 |
| Royalty Fees | (4,025.16 | (4,171.23 | (3,777.90) | (3,940.26) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (15,914.55) |
| **Total Other Income (Expe** | (3,997.49 | (4,143.70 | (3,747.27) | (3,909.76) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | (15,798.22) |
| **Net Income (Loss) Before Taxes** | (23,732.7 6) | 35,647.62 | (4,023.85) | 25,497.36 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 33,388.37 |
| **Net Income (Loss)** | $ (23,732.7 | $ 35,647.62 | $ (4,023.85) | $ 25,497.36 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 0.00 | $ 33,388.37 |

See Accountants' Compilation Report

6